GEORGE NEDDERMEYER, Appellant, v. CRAWFORD COUNTY, IOWA, Appellee.

**VENUE:** Change of Venue—Nontimely Motion. A motion for change of venue is not timely, when made for a cause known from a time prior to the appearance term, but not asserted until after several continuances had been ordered. (Sec. 3506, Code, 1897.)

**TRIAL:** Gambling on Answer of Witness. Objectionable testimony responsive to an objectionable question may be allowed to remain in the record *when no objection was lodged against the question.* So held where the question not objected to called for a consideration of benefits received by the land sought to be condemned for public purposes.

**TRIAL:** Motion to Strike—Record Necessary for Review—Refusal. Complaint that the court refused to strike objectionable testimony will not be considered, unless complainant affirmatively shows that he did not gamble on the answer to a question improper in form. He may do so by showing that the question was proper in form, but that the answer was in such form as to conceal its inadmissibility until cross-examination was had.

**EVIDENCE:** Opinion Evidence—Weight and Sufficiency. Instructions reviewed, relative to the right of jurors to use their own judgment as to values, in connection with expert testimony as to values, and held correct.

**DAMAGES:** Instructions—Damages ''Necessarily'' Suffered. Instructions may not be condemned because the court inferentially stated that the damages would be confined to those ''necessarily'' suffered by plaintiff.

*Appeal from Crawford District Court.*—Z. A. CHURCH, Judge.

DECEMBER 15, 1916.

OPINION ON REHEARING DECEMBER 15, 1919.

REHEARING DENIED JANUARY 20, 1921.

APPEAL by plaintiff from an order in condemnation proceedings, whereby he was allowed $99 of damages for the alteration of the location of a highway.—*Affirmed.*

*L. H. Salinger,* for appellant.

*P. J. Klinker,* County Attorney, and *Andrew Bell, Jr.,* for appellee.

EVANS, J.—I.   Pursuant to legal statutory proceedings, the board of supervisors of Crawford County, Iowa, changed the location of a section of highway.   Both the old and the new locations were upon land of the plaintiff.   He filed a claim of $5,000 damages.   The board allowed him $150.   He appealed to the district court, and, upon final trial therein, obtained a verdict of $99.   The following plat will aid in an understanding of the alteration made.

The plaintiff is the owner of a farm of 800 acres.   It lies in part both in Section 24 and Section 25.   Section 25 adjoins on the south.   Both sections are included in the plat.   A north and south highway extended along their west line.   An east and west highway extended along the section line between Sections 24 and 25 for the greater part of the distance.   It will be noted from the plat that a railway extending from southeast to northwest cut the southwest corner of Section 24.   The highway upon the section line between Sections 24 and 25 extended westerly to and over the railroad crossing, and then turned northwesterly, so as to run parallel with the railroad right of way.   This section of the highway, constituting the hypothenuse of the triangle with the west and south boundaries of Section 24, is known in the record as Road No. 623.   The alteration adopted consisted in vacating this section of the road, and establishing a corresponding section on the other side of the railroad right of way, appearing upon the plat as Road No. 954.   The area of land taken for the new section was 1.22 acres.   The area of land included in the old section, vacated, was .51 of an acre.

PLAT
of
Road No 954

The issue tried was, What was the damage to plaintiff's farm, caused by the establishment of the new section?

The questions to be determined upon this appeal are stated by appellant in his opening argument as follows:

"1. Was there error in overruling either or both of two motions for change of venue?

"2. Did appellant have a fair trial, in view of the allowance made him, and the fact that the panel was filled with taxpayers of the defendant county?

"3. Was there error in receiving certain testimony on damages?"

At the first trial of the case, the jury rendered a verdict for the plaintiff, but omitted, doubtless inadvertently, to state

the amount. This verdict was necessarily set aside. Before the

1. VENUE: change of venue: non-timely motion.

second trial, plaintiff filed a motion for a change of venue, upon the general ground of prejudice in the county. The claim of prejudice was predicated upon the theory that the jurors were necessarily taxpayers to some extent, and would thereby be influenced. This motion was overruled, and appellant assigns error thereon. The record discloses several controlling reasons why this point cannot be sustained.

1. Appropriate objections were filed to the motion. Affidavits were filed by both parties, for and against. The affiants were brought into court and examined. This examination is not presented in the printed record. The showing upon which the court acted, therefore, is not before us.

2. When the motion for change of venue was made, the case had been pending in the district court for more than 15 months. Necessarily, the case had been continued several times. The statute contemplates that an application for a change of venue shall be made, if at all, at the appearance term, if the cause therefor be then known. It cannot be made after a continuance, except for a cause not known previously. The cause for a change set forth in the motion was as apparent at the appearance term as it was when it was made. The fact that the jurors would be drawn largely from the taxpayers of the county was obvious at all times. The argument for the appellant at this point is that the result of the first trial had disclosed to him existence of prejudice, in that the jury had failed to return a verdict. But there was nothing in the action of the jury to indicate prejudice. If the failure of the jury to insert the amount of the verdict in the blank space provided was the result of anything else than an inadvertence, it is not made to appear in the record.

3. The appellant was in no manner prejudiced by this ruling. Following it, he went to trial before a Crawford County jury, and got a verdict for $168, which was an increase over the amount allowed by the board of supervisors. This verdict was assailed by the defendant, not by the plaintiff, and upon its motion was set aside.

Up to this point, therefore, the plaintiff had not been hurt, in a legal sense, for want of change of venue.

Subsequently, and before the third trial, he again filed a motion for a change of venue, on the same ground as before. Upon objections filed by the defendant, this motion was overruled, and complaint is laid thereon. Here again the record discloses clear reasons why this complaint cannot be sustained.

1. This motion was defective in form, in that it was not supported by the affidavits of three disinterested persons, as required by Code Section 3505.

2. There was no showing that the cause for the change was not known from the beginning. The only new discovery of the cause urged was that the result of the two previous trials indicated that he could not get justice. This was a mere conclusion on the part of the plaintiff. The result of the second trial was favorable to the plaintiff. True, the verdict was not for $5,000, but the court was not required to believe that that failure of the jury was the result of prejudice, or evidence thereof.

3. This motion was not filed for more than seven months after the second verdict. We deem it clear that the trial court did not err in overruling these motions.

II. Did the verdict of $99, rendered at the last trial, in view of the fact that the jurors were taxpayers, indicate that the plaintiff had not obtained a fair trial?

If the plaintiff waived his right to a change of venue by failure to make timely application therefor, his case would be necessarily tried before the taxpayers of Crawford County as jurors. The area taken was slightly less than 1.22 acres. The highest valuation per acre which the plaintiff himself and his witnesses put upon his farm was $80. The highest valuation put thereon by the defendant's witnesses was $60 per acre. At the highest valuation, the plaintiff's lands so taken would be worth $97.60. True, the plaintiff contended that the value of his 800-acre farm had been diminished $10 per acre, but the reasons appearing in the record for such a contention are very meager indeed. It is not a case where a farm has been so seriously divided that parts thereof are rendered inaccessible. On the face of the record, it would be difficult for a disinterested person to

find how the alteration made could work any substantial damage, other than the appropriation of the necessary land. Surely, we cannot say, as a matter of law, that the record discloses that the plaintiff did not have a fair trial.

III. Complaint is made of certain testimony, and the refusal of the court to strike it. Appellant's abstract discloses the following direct testimony of witness Jones:

2. TRIAL: gambling on answer of witness.

"Think the farm would be worth more money after the relocation of the road."

On cross-examination, the following is disclosed:

"I think the value of the Neddermeyers' land was improved because the new road is a better road than the old one. I think the increase in value is partly due to that. Another thing that has improved the price is that he doesn't have to cross the track at all. This is another improvement in the road. When we get down to plain language, the only reason I tell the jury that the land was worth more, if it is, than before, is because the new road is an improvement on the old road."

Based upon the foregoing cross-examination, the plaintiff moved to strike the testimony of the witness as to the value of the land since the relocation, because it was based upon the consideration of betterments made by the change. This motion was denied. Did the trial court err at this point? To strike evidence where there was no error in its original admission is not usually a matter of right to the opposing party. We assume that the motion had reference to the direct testimony of the witness, although it does not so state. If this testimony by the witness was responsive to an objectionable question, there was no error in admitting it, in the absence of objection. The printed record does not disclose the form of the question thus answered by the witness. The trial court had it before him, and we must presume that it was such as to justify his ruling.

Assuming that the answer was responsive to a question objectionable in form, plaintiff was bound to object thereto, in order to be in a position to complain. He could not mend

3. TRIAL: motion to strike: record necessary for review: refusal.

his hold by thereafter moving to strike the answer. We are required to presume in favor of the ruling of the trial court. It was incumbent

upon the plaintiff, therefore, to disclose here a record that jus-
tified his failure to object to the direct testimony of the witness.

If the court commit error in admitting improper testimony,
it may ordinarily cure the error by striking the testimony, either
with or without a motion therefor. If it refuses to strike the
same, the original error remains in the record. The refusal to
strike has made it neither less nor more. If, however, a ques-
tion proper in form be falsely answered by a witness, so as to
conceal the inadmissibility of his testimony, then the opposing
party is afforded no opportunity to object. If, in such case,
cross-examination develops the fact of inadmissibility thus con-
cealed, then a motion to strike is a proper method of objection.
This is the hypothesis upon which plaintiff predicated his mo-
tion. But he has failed to disclose a record here to sustain such
hypothesis. For aught that appears before us, the answer of
the witness was strictly responsive to the question. If the ques-
tion itself was objectionable in form, the plaintiff waived
objection by failing to make any.

In this case, the trial court expressly instructed the jury
that benefits accrued to the plaintiff by reason of the relocation
of the road should not be considered in reduction of damages.
This gave the plaintiff the full benefit of the law in that regard.
What is here said is alike applicable to the motion to strike the
testimony of the witness Mains.

IV. Error is laid upon the examination of the witness
Marshall, and based upon the following record:

"Q. Did you say that the farm was damaged any on ac-
count of this change in the road, and if he drove cattle from the
barn by way of this public highway to his pasture on the south
side of the railroad? (Plaintiff objects that this is incompe-
tent; the witness is incompetent; that it calls for a conclusion,
and is an attempt to invade the province of the jury. Over-
ruled. Plaintiff excepts.) A. No, sir, I don't think it would
be damaged."

Separated from the context, this question and answer are
quite meaningless; nor do they regain much by restoring them
to the context. The record discloses that the plaintiff, as a wit-
ness, predicated his damages in part upon an interference with
the habits of his cattle. He testified, as an expert cattle raiser,

to the effect of the change of road upon the habits of his cattle, in that it greatly increased the difficulty of driving them. He testified as follows:

"Before this change in the road was made, I could take these cattle back and forth alone, and without help. My business is that of raising cattle, and I have been engaged in the same about 25 or 30 years. I am familiar with the habits of cattle, and the driving of them, and I am acquainted with the nature of cattle, what it takes to drive them, and how they act while being driven. Since this change in the road, the help reasonably required now to take these cattle from the buildings where they are kept, to the pasture and back, is two men and a horse, to drive them over there. I have nearly three quarters of a section in pasture land south of the track, and, as a rule, I have had and still have about 200 or 250 head of cattle."

The witness Meyer testified as follows:

"Before this change, he was accustomed to get his cattle and produce to and from across the railroad track on that old road, straight through. He could open the gate, and then the cattle goes by themselves through. They go better over that old road by themselves than now with a couple of men on horseback. It is now hard work to get his cattle to and from across the railroad track, by going the new road. It is hard on account of that turn. Now you make a turn on the new road to get the cows across the track. He makes a turn clear around, and then this other road goes down to Charter Oak. Before that, on the old road, they could go just as well alone, when you opened the gate. The dog brought them through; they never needed any man; they would go straight over the crossing. Now it takes a good man and a good horse, and then it is a hard job for one man anyway; must be a good driver. The trouble is to get them the new road around, for the reason that they go clear up by the track, or go around to Charter Oak. That is the trouble now. That old road was always straight through; the gate was over there; and you could leave it open in the evening, and in the morning, the cattle would go down by themselves. That is one part that is easier than it is now; the cattle goes clear over the track a good deal easier."

Responding to this line of evidence, the defendant produced Marshall, as an expert cattle raiser, who testified:

"I think I have had considerable experience driving cattle, handling sometimes 1,000 a year, sometimes less."

It was in this connection that the question and answer complained of occurred. The question is vague, and hence quite meaningless. We see nothing therein or in the answer that could possibly work any prejudice.

The foregoing are the only errors stated at the opening of appellant's brief, and the only errors argued. Appended to his argument, however, are certain additional error points.

4. EVIDENCE: opinion evidence: weight and sufficiency. These error points complain of Instructions 10 and 11. These are as follows:

"10. The question of value of this land both before and after the location of this highway has been attempted to be established by taking the opinions of witnesses who have testified before you on this question. This evidence is what is termed 'opinion evidence,' and you are instructed, in relation thereto, that you have the right to use your own knowledge of the values of lands, the location of highways, and of affairs generally, in connection with the testimony as to the values and damages which has been given by the witnesses. By this is meant that you are not obliged to rely wholly upon the opinions of the witnesses as to the value of this land or as to the damages, but that, in connection with such opinions, you may use and be guided by your own judgment in such matters.

"11. By market value, as the term is used in these instructions, is meant, not a fanciful value which the owner may put upon said property or consider the same worth, neither is it a price which might be realized from a forced sale, but it is the amount for which the property would fairly sell upon the open market, in the manner in which sales are usually made in the community where the property is situated, in the ordinary transactions between men when buying and selling upon the open market; and applying this rule, you will decide whether or not this property, if sold in this manner, would *necessarily* bring a less price or sell for less money than it would just prior to the location and establishment of this highway; and applying this rule, if you find that it would *necessarily* sell for less money

just after the location and establishment than just before the establishment and location, then the plaintiff would be entitled to recover that difference so found at your hands.''

As to Instruction 10, complaint is directed to the second sentence thereof, as to the right of the juror to use his own knowledge. It may be conceded that this sentence is not well put, in that its meaning is not clear. Reading it, however, in connection with the last sentence, which purports to state just what is meant, the objection urged against it quite disappears. Complaint of Instruction 11 is directed against the use of the word ''necessarily,'' in the latter part of the instruction. It may be conceded here also that this word might have been omitted, without detriment to the instruction. We are satisfied, however, that the use of the word in its connection is not error. It is true, both in a legal and in a popular sense, that, if property has depreciated in value, it will necessarily bring a lower price than before. This is the assumption upon which the alleged depreciation is predicated. If property will bring the same price after depreciation as before, it is not depreciated. We think there was no error here. The judgment of the lower court is—*Affirmed.*

LADD, C. J., GAYNOR and PRESTON, JJ., concur.

*5. DAMAGES: instructions: damages "necessarily" suffered.*