PAUL McCRADY, administrator of estate of Lorraine McCrady, deceased, and PAUL McCRADY, appellee, v. JOHN SINO et al., appellants.

## No. 50715.

(Reported in 118 N.W.2d 592)

858

DECEMBER 11, 1962.

REHEARING DENIED FEBRUARY 12, 1963.

Messer & Cahill and D. C. Nolan, all of Iowa City, for appellants.

Clewell, Cooney & Fuerste, of Dubuque, and Hart, Shulman, Phelan, Tucker & Ivie, of Iowa City, for appellee.

MOORE, J.—This is an action for damages by Paul McCrady, administrator of the estate of Lorraine McCrady and Paul McCrady resulting from her death when Lorraine fell from the truck owned by defendant Emil Marcucci and driven by defendant John Sino. From judgment entered on the jury verdict of $6000 in favor of the estate and $2000 for Paul McCrady, defendants have appealed.

Defendants have made eleven assignments of error which they group and argue in four divisions. They assert the trial court erred (1) in overruling defendants' objections to the testimony of three of plaintiffs' witnesses, (2) in submitting to the jury the issue of whether Lorraine was a guest or a nongratu-

itous passenger, (3) in not sustaining defendants' motion for a directed verdict, and (4) overruling defendants' motion to withdraw certain pleaded specifications of negligence.

For several years prior to 1958 Marcucci had owned, trained and shown ponies. He transported his ponies to horse shows in different cities in an International truck, the body of which he had converted from a flour truck. It had a closed-box type body, 14 feet long, 6½ feet high and 8 feet wide with three stalls to the front and two stalls to the left rear. From the right rear to the center aisle the space was used to haul equipment and passengers. Marcucci had made a Dutch door in the middle of the right side of the box through which the ponies were loaded. It was made of ¾ inch plywood, braced with iron, 6½ feet high, 53 inches wide, with the bottom portion four feet high. At all times pertinent herein the top part was fastened open. The bottom part was hinged to the back and therefore opened to the front. At the outside front part of this door was a regular barn door hasp which went over a ring bolted to the truck body. When the lower door was closed the hasp was affixed over the ring and an ordinary harness (or bull) snap placed in the ring. The evidence is in dispute as to whether a person standing on the floor of the truck could reach the snap from the inside.

During the morning of June 22, 1958, four ponies were loaded in this truck at Maquoketa for the Iowa City horse show. Marcucci's daughter, Annette, age 14, and Lorraine McCrady, age 13, occupied the space near the ponies. John Sino, an experienced operator, became the driver. He was on the trip to learn more about handling and showing ponies. His minor son and Marcucci rode in the truck seat. A stop was made at a Mount Vernon oil station where Marcucci went to the rest room. Sino removed the snap, opened the side door and asked the girls if they wanted some refreshments, which they declined. Marcucci returned and after being assured by the girls they were getting along all right, Sino closed the door, placed the latch over the ring, put on the snap, and both returned to the truck seat. After some inquiry from Marcucci about the side door and lock, Sino got out of the cab, checked the door and snap, and "flipped it around". Defendants disagree in their testimony whether the

pin or hook of the harness snap went through the ring. The trip was then resumed toward Iowa City on Highway 261 to the Rapid Creek bridge about two miles north of Iowa City where it was later learned the accident happened. Three or four feet north of this bridge were several bumps. When trucks struck this point some shaking of the ground resulted. Sino drove the truck over the bridge at a speed estimated by defendants as high as 35 miles per hour.

As the truck made a stop in Iowa City, defendants' attention was called to the side door which was open. They investigated and found both girls were missing. The hasp and all parts of the door and lock were unchanged except the snap, which some of the evidence shows was rusty, was gone. It was never found thereafter. Defendants immediately started to retrace their route and as they approached the Rapid Creek bridge they learned an ambulance was taking the girls to an Iowa City hospital where both died within a few hours. Lorraine's body was found on the bridge 67 feet from the north end. Annette's body was found on the bridge several feet farther south.

I. Defendants contend the trial court erred in ruling on objections to the testimony of plaintiffs' witnesses, Lloyd Williams, J. M. Trummel and Richard Reddick. Lloyd Williams testified he had been a body shop foreman at Cedar Rapids for the preceding seven and one-half years specializing in body work on trucks. For 24 years prior to that he had repaired cars and trucks. He stated he was familiar with the usual truck door-locking devices and had frequently repaired or replaced worn or damaged truck door latches. Part of his evidence was:

"Q. Now, Mr. Williams, will you state whether you have observed in the past seven and one-half years and particularly in the year 1958, whether there is any customary method used by persons having to do with the operation of van trucks such as shown in Exhibit 'G' [a photograph of the Marcucci truck] relative to the matter of fitting those trucks with door fastenings? A. All trucks in general highway use are equipped with accepted safety latching devices, usually top and bottom with a locking receptacle in the center.

"Q. Will you state whether in your experience with boxes of this type shown in the photograph Exhibit 'G' this is a customary or usual locking device for a door such as shown on the box of that truck, and was so customary and usual in and about this community in 1958? A. No, it wasn't."

Defendants made timely objections that these questions called for the opinion and conclusion of the witness, the witness not having been shown to be qualified to express an opinion. The trial court properly overruled the objections.

 While it is not conclusive, evidence of what is usual and customary is generally admissible on the issue of negligence. Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 15 N.W.2d 286; Gibson v. Shelby County Fair Assn., 246 Iowa 147, 65 N.W.2d 433; Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82; Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167. A custom or usage in any particular trade or business may be shown, as a fact, by a witness who is qualified by knowledge and experience to testify to its existence. Anderson v. Illinois Cent. R. Co., 109 Iowa 524, 80 N.W. 561; Middleton v. City of Cedar Falls, 173 Iowa 619, 153 N.W. 1040; Alley, Greene & Pipe Co. v. Thornton Creamery Co., 201 Iowa 621, 207 N.W. 767; Gibson v. Shelby County Fair Assn., 246 Iowa 147, 65 N.W.2d 433. Williams was sufficiently qualified by knowledge and experience to state the customary method used in locking truck doors. He occupied such a position as to know of the existence of the custom as a fact.

 The witness J. M. Trummel testified he was a professor of mechanical engineering at the University of Iowa and the holder of a Ph.D. degree in mechanical engineering. He was trained in basic areas of physics. He stated he observed mechanical deficiencies as a matter of mechanical design in the locking device used in closing and keeping locked the side door of the Marcucci truck in that it was a single locking device. He stated the best and accepted engineering way to provide surety of function of such a door is to use a backup or secondary device. He expressed an opinion the snap was inadequate and was the part which failed.

 Sino's timely objections to this testimony as wholly in-

competent and calling for opinions and conclusions were properly overruled by the trial court. Sino was fully aware of the locking device before the trip started and affixed the snap over the ring at Mount Vernon. The rule is well established that opinon evidence is admissible if the subject matter is such that opinion evidence of an expert will aid the jury and if the witness is qualified to give an opinion. Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646; Moyers v. Sears-Roebuck & Co., 242 Iowa 1038, 48 N.W.2d 881. The opinions stated by Trummel and Williams that the locking device and snap were inadequate were clearly admissible although they passed on a controlling fact, or the ultimate fact which the jury was to determine. Grismore v. Consolidated Products Co., supra.

Plaintiffs called John Sino as a witness. He testified, "to the best of my knowledge I did not state to any person that the girls, Annette and Lorraine, were in the back of the truck to keep the ponies quiet." The plaintiffs then called highway patrolman Richard Reddick who testified he had talked to both Sino and Marcucci after the accident and in his opinion one of them told him the reason the girls were riding in the back of the truck. He was then asked what was said. Objection was made that the question called for mere speculation and conjecture and not competent to prove any issue in the case, and not competent or material to prove any issue against Sino. The trial court overruled the objection. Reddick then testified he had been told the girls rode in the truck for transportation of course, and also to keep the ponies quiet, to watch them during the trip to the horse show. Defendants assert the court erred in overruling the objection. No other evidence could have been as competent and material as to the purpose of occupancy as the expressions of Marcucci himself. The evidence was admissible as an admission and went directly to the issue of plaintiff's decedent's status while riding in the truck. In Barish v. Barish, 190 Iowa 493, 495, 180 N.W. 724, 725, we said: "* * * any admission against interest must be received, if relevant, whether it be found on a transcript or upon a pine shingle." See also Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 106 N.W.2d 579; 31 C. J. S., Evidence, section 272, page 1023. The

objection made by Sino was not sufficiently specific to advise the trial court why it was claimed it was inadmissible.

In 3 Am. Jur., Appeal and Error, section 263, page 41, the rule is stated: "The general rule is that unless the reasons for an objection are obvious, the grounds thereof must be stated with such particularity as to call the attention of the court to the specific point, and that the appellate court will consider only such grounds of objection as are specified."

The same principle is laid down in 4 C. J. S., Appeal and Error, section 290(b), page 878.

In Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1263, 30 N.W.2d 97, 103, we said:

"Ordinarily the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious."

See also Neddermeyer v. Crawford County, 190 Iowa 883, 888, 889, 175 N.W. 339, 342; Ferris v. Riley, 251 Iowa 400, 408, 101 N.W.2d 176, 180; State v. Hodge, 252 Iowa 449, 464, 105 N.W.2d 613, 620.

II. Defendants next contend the trial court erred in submitting to the jury the question of whether plaintiff's decedent was a guest or a nongratuitous passenger. They argue plaintiff failed to carry the burden of proving she was not a guest while riding in the truck and therefore any recovery for ordinary negligence is barred by section 321.494, Iowa Code. It provides:

"Guest statute. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

In Murray v. Lang, 252 Iowa 260, 266, 267, 106 N.W.2d 643, 647, in reference to our guest statute we said:

"Thus, in line with our rule of liberal construction of this statute for the protection of 'the owner or operator of a

864

motor vehicle', we have in effect created a presumption, rebuttable, that an occupant riding in a car operated by another person is a guest within the meaning of section 321.494, and has the burden of proving otherwise in an action predicated upon negligence of the operator or owner."

In Knutson v. Lurie, 217 Iowa 192, 197, 251 N.W. 147, we held the occupant of an automobile driven by another is neither a guest nor mere invitee when he is riding there (1) when performing his duties as a servant of the owner or operator of the car; or (2) for the definite and tangible benefit of the owner or operator; or (3) for the mutual, definite and tangible benefit of the owner or operator on the one hand, and of the occupant on the other. It has been cited many times upon this proposition. See Thuente v. Hart Motors, 234 Iowa 1294, 15 N.W.2d 622; Stenberg v. Buckley, 245 Iowa 622, 61 N.W.2d 452; McBride v. Dexter, 250 Iowa 7, 92 N.W.2d 443; Bodaken v. Logan, 254 Iowa 230, 117 N.W.2d 470. Such benefits to the operator or owner as are incidental to hospitality, social relations, companionship or the like are not definite and tangible benefits as are contemplated by the rule.

Plaintiffs claim Lorraine was riding in the truck for the definite and tangible benefit of Marcucci. In addition to the testimony of Reddick, plaintiff produced evidence that the ponies were high spirited and fractious, on one occasion Marcucci's ponies kicked down a stall in the truck box while unattended, it was considered necessary by Marcucci that someone ride in the rear of the truck to keep the ponies quiet on a trip, it was customary for those transporting ponies by truck to carry persons in the back with the ponies, Marcucci had on previous trips arranged for persons to ride with the ponies to keep them quiet, on a prior occasion Marcucci had requested Lorraine's brother to go on a trip to help with the ponies, and, when four or five ponies were being carried, one person could not keep them quiet. Prior to June 22 plans had been made for Lorraine's sister, Barbara, to go on the Iowa City trip. A few nights before the trip Marcucci and Annette while at the McCrady home were advised Barbara would be unable to go. Annette then asked

Lorraine, who was experienced in working with the ponies, to make the trip. Lorraine had made such trips on prior occasions at the request of Marcucci.

We agree with the trial court. A fact question for the jury was established by the evidence as to Lorraine's status while riding in the truck.

III. The defendants next assign as error the court's failure to sustain their motion for a directed verdict made at the close of plaintiff's evidence and renewed at the close of all the evidence. Most of the argument is made on behalf of Sino. He claims he owed no duty to plaintiff's decedent and that the evidence was insufficient to show any negligence on his part which was a proximate cause of the accident.

John Sino testified he was 42 years of age and started driving trucks at age 14, that during his six years in the Canadian Army he drove trucks of all sizes and after his return in 1945 drove trucks of various sizes for bottling and dairy companies. At the time of the accident he was the manager of a dairy company at Maquoketa, drove a truck approximately 60 miles per day and supervised six men in the operation of six trucks and a semitrailer. One of the reasons he drove the truck on the day of the accident was his confidence based on his long experience as a truck driver.

Sino was fully aware of the door-locking device prior to the trip on June 22 as he had made two prior trips with Marcucci to horse shows at Grand Mound and Wheatland. Before the start of the trip and again at Mount Vernon Sino assumed the responsibility of closing the truck door and fastening the harness snap through the ring. At the latter stop after fastening the snap he rechecked it and had full knowledge of the locking device when he assumed control of the truck.

As driver of the truck, he owed a duty to exercise ordinary care and to obey the laws of the road. If he had been a mere volunteer or had been acting gratuitously nevertheless he had the duty to exercise ordinary care. The general rule is stated in 65 C. J. S., Negligence, section 4(b), page 343, as follows:

"One who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury

resulting from his failure to do so, even though his undertaking was purely voluntary or gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon. * * * One who voluntarily creates and maintains a condition for the use of others is, in the absence of some privilege, charged with the duty to exercise care to prevent that condition from being a source of danger to those who use it."

See also Adams v. Chicago G. W. R. Co., 156 Iowa 31, 135 N.W. 21, 42 L. R. A., N. S., 373; Carey v. Davis, 190 Iowa 720, 180 N.W. 889, 12 A. L. R. 904.

The evidence clearly established a jury question as to a duty owed by Sino to plaintiff's decedent. The questions of negligence and proximate cause will be considered in the next division of this opinion.

IV. After sustaining defendants' motion to withdraw certain specifications of negligence, the trial court submitted to the jury the three following charges of negligence against defendants:

(a) In failing to equip such truck box with a door lock adequate to withstand the stresses placed upon it in said trip.

(b) In operating said truck at a speed that was greater than reasonable and proper under all the conditions then and there existing, including the nature of the highway traveled upon and the door to such box.

(c) In carrying plaintiff's decedent in the rear box portion of said truck when they knew or in the exercise of ordinary care should have known that said door was not equipped with an adequate door-locking device.

In addition to the evidence already set out Williams and Trummel testified in detail concerning stress and strain on the truck body, shifting of weight during travel, vibration, twisting and pressure on the door-locking device. The evidence created a jury question as to the first specification of negligence.

Section 321.285, Code of Iowa, provides:

"Speed restrictions. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent

speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and. of any other conditions then existing, * * *."

The driving of the truck at a speed estimated as high as 35 miles per hour down an incline toward the bridge where the accident happened over bumps in the road with the knowledge on the part of both defendants of the type of equipment being operated and the load being carried established a jury question as to the second specification of negligence.

Both defendants were fully aware of the single locking device of the truck door prior to and during the trip to Iowa City. The court properly submitted the third specification of negligence.

"Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law." R. C. P. 344 (f) 10.

The question of proximate cause in this case was one of fact for the jury.

"In considering the propriety of a directed verdict for defendant the court gives plaintiff's evidence the most favorable construction it will reasonably bear." R. C. P. 344 (f) 2.

We agree with the trial court in overruling defendants' motion for directed verdict.

We find no error. This case is—Affirmed.

All JUSTICES concur except STUART, J., who takes no part.