142 N.W.2d 530 (1966)
H. Maurine ENGLUND, Appellant,
v.
YOUNKER BROTHERS, INC., and Mart, Inc., Appellees.
No. 51990.
Supreme Court of Iowa.
May 3, 1966.
As Amended on Denial of Rehearing June 14, 1966.
Buell M. Lindgren and S. R. Eller, Des Moines, for appellant.
Eugene Davis, of Duncan, Jones, Riley & Davis, Des Moines, for appellee Younker Brothers, Inc.
Robert Allbee, of Bannister, Carpenter, Ahlers & Cooney, Des Moines, for appellee Mart, Inc.
BECKER, Justice.
Plaintiff seeks damages by reason of a fall which occurred in the parking lot immediately adjacent to the store known as Younkers-East located in Des Moines. Defendant Younkers Brothers, Inc. rents the premises from defendant Mart, Inc. Plaintiff alleges she stepped in a hole created by broken and crumbling concrete in the lot as she was returning to her car. The first trial resulted in a mistrial; the second in verdict for defendants. Plaintiff appeals.
I. Plaintiff's first assignment of error grows out of the mistrial. Briefly, the mistrial *531 occurred when defense counsel mistook one of the jurors for defendant Younkers' representative who was attending the trial. During recess counsel talked to a juror under the impression that he was talking to his client's representative and made some remarks concerning opposing counsel. The remarks were not complimentary to plaintiff's attorney. The juror identified himself as a juror. Counsel immediately broke off the conversation and reported the incident to the court in chambers.
It would serve no useful purpose to detail the conversation between lawyer and juror. Suffice to say, enough was said to justify a mistrial. However, both plaintiff and defendant Younkers agreed to excuse the juror and use an alternate. To this defendant Mart, Inc. objected, insisting on a mistrial.
The court observed: "Well, the court is convinced that it was an innnocent mistake. There is no doubt about that in the court's mind, * * *."; declared a mistrial, taxing the costs to defendant. The case was reset at a later date.
Plaintiff moved to tax attorney fees as costs for the two days trial work aborted by the mistrial which plaintiff alleged was due to defense counsel's misconduct. Defense counsel denied misconduct, stating that the incident was due to his innocent mistake. The motion to tax attorney fees was denied.
This type of incident should not occur during a trial conducted by experienced and competent counsel. Nevertheless, due to the tension and occasional frustration incident to such trials, the efforts of trial lawyers and human nature, such incidents do occur. We understand from our examination of the record why plaintiff's counsel feels fully justified in denominating defense counsel's remark as misconduct, but we are satisfied that such conduct was inadvertent, not wilful or deliberate.
We agree with plaintiff that such conduct is not to be encouraged, but on the contrary, discouraged. We observe that the offending attorney immediately reported to the court and truthfully told the substance of the conversation.
While plaintiff cites several cases from other jurisdictions that indicate a right to recompense where the wrongful act of a party has caused the opponent unnecessary attorney fees, none are in point here. These cases deal primarily with the imposition of attorney fees as an incident to a party caused continuance, a mistrial with certain broad statutory authority in the court, and the like. The two Iowa cases cited are not analogous.
To the contrary defendants cite Thorn v. Kelley, Iowa 134 N.W.2d 545, 548.
"The right to recover attorney fees as part of the costs does not exist at common law. They cannot be so allowed in the absence of a statute or agreement expressly authorizing it. In order that they may be so taxed the case must come clearly within the terms of the statute or agreement. Indeed the court does not have inherent power to tax costs even to the losing party. Harris v. Short, 253 Iowa 1206, 1208-1210, 115 N.W.2d 865, 866-867, and citations; Dallas v. Dallas, supra, 222 Iowa 42, 44, 268 N.W. 516; 20 C.J.S. Costs § 218a."
Confronted with this Iowa rule, the trial court correctly refused to tax attorney fees as part of the costs.
II. As to the second trial, plaintiff alleged defendant Younker Brothers, Inc. was the tenant of defendant Mart, Inc. by virtue of a written lease and defendants controlled the cement parking area adjacent to the store. On June 27, 1963, at about 8:20 P.M., plaintiff with a friend, Louise Wheaton, went to Younkers-East to shop, parked her car in the parking lot and walked to the store. Shortly thereafter, returning to her car, she stepped on broken and crumbling concrete, causing her to fall *532 and break her hip. The court submitted plaintiff's allegation that defendants supplied a defective parking area which it knew or should have known was defective, and failure to warn persons using the lot as to its condition.
Louise Wheaton testified she was with Miss Englund when they walked between two cars in the parking lot. It was dark at the time Miss Englund fell. There was a hole where she fell that was filled with crumbled rock and cement.
The errors relied upon for reversal involve evidentiary rulings; a). admitting into evidence a photograph known as Exhibit 6, b). admitting into evidence testimony of one Lindy Brown as to the illumination of the parking lot at the time the lights were installed, and c). failure to admit into evidence certain parts of a lease between Younker Brothers, Inc. and Mart, Inc.
The lighting conditions prevailing at the time and place of plaintiff's fall became one of the main issues in the case. After the mistrial was declared and before the second trial was reached, defendant procured Exhibit 6, a photograph taken by a commercial photographer at approximately 9:15 P.M., April 27, 1965, at a time when it was dark and the parking lights were on. The photographer testified that the photograph correctly shows and truly pictures the conditions prevailing in the parking lot at the time the picture was taken. He further testified that the picture indicates conditions as he saw them when he took the picture. He used no artificial light.
Plaintiff's trial objections to Exhibit 6 were that it was incompetent and irrelevant to any issue in the case, being entirely remote from the time alleged that this accident occurred; no evidence that the light was the same then as it was at the time of the accident; the photographer wasn't present when the accident occurred and light varies in every occasion; that what the photographer observed was not the same as was observed the night the accident occurred; and finally that the picture had nothing to do with depicting any situation that was prevalent or present at the time of the alleged accident on which this suit is based.
Plaintiff now urges five objections to the exhibit; remoteness of time of taking the picture (almost 2 years delay); inky blackness at time of taking this photograph (vis-a-vis dusk at 8:00 P.M., June 21st which is urged as a matter of common knowledge); use of 4 second shutter speed; use of wide angle lens; and placement of the cars contrary to the evidence.
None of these objections, except that of remoteness as to time, were brought to the attention of the trial court either by objection or cross examination. The shutter speed appears of record as part of the legend on the reverse side of the picture. The type of lens used is not shown in the record.
"The time at which a photograph offered in evidence was taken is important only with reference to the question of probability of change in condition of the person or object portrayed. * * * The mere fact, however, that photographs were taken at a time different from that in question does not render them inadmissible if witnesses are able to verify them as substantial representations of the conditions as they existed at the time in question. * * * Photographs of the scene of an accident taken at or near the time are not always obtainable, and the only practical rule would seem to be that the changes must not be such as to destroy the substantial identity and that changes, whatever they may be, should be carefully pointed out and brought to the jury's attention." 20 Am.Jur. Evidence, § 731, page 611.
Plaintiff's witness, Miss Wheaton, had testified that "It wasn't light between the two cars. It was dark"; and "It was dark. It was real dark between those two cars *533 just like when you walk into a dark room." Defendants offered parts of plaintiff's deposition where she said:
"Q. When you arrived at the Eastgate area and left your car in the parking lot what was the condition as far as lightness or darkness was concerned? A. I presume lights were on.
"Q. Well, leaving the lights out of it for a moment, was it night? A. Quite dark.
"Q. Quite dark? A. Quite dark.
"Q. By `quite dark' what do you mean? A. Approximately dark. It was approximately night dark; that isn't a good way to say it, but"
The picture concerns itself with the concrete parking lot, two cars that appear in the picture and the lights used to illuminate the area. There is no question of trees or other foliage that would be subject to change. Remoteness of the time of taking the picture would, therefore, be immaterial with the exception of the condition of the lights. Defendant Younkers had produced testimony by its manager that the lights were the same as those present in June and July of 1963 and that they had not been changed in any way in candle power or intensity. The trial court alluded to the testimony of this witness in overruling plaintiff's objection to the exhibit.
Plaintiff's objections here really go to the use of time exposure on a photograph taken at night and the affect of such techniques on admissibility. This matter was not called to the attention of the court by objection or by eliciting additional information on cross examination or by plaintiff's own witnesses. Plaintiff did not, and does not now, claim surprise. We are cited no cases by either side which consider the admissibility of such photographs where light is a factor and a time exposure is used. While we agree that argument can be made that such an exhibit is inadmissible because of the light gathering power of the exposure, that argument cannot be made for the first time here.
"An objection made in the trial court will not be treated in the appellate court as raising any question for review which is not within the scope of the objection as made, both as to the matter objected to and as to the grounds of the objection, so that the question may be fairly held to have been brought to the attention of the trial court." 4 C.J.S. Appeal and Error § 248, page 767.
"In 3 Am.Jur., Appeal and Error, section 263, page 41, the rule is stated: `The general rule is that unless the reasons for an objection are obvious, the grounds thereof must be stated with such particularity as to call the attention of the court to the specific point, and that the appellate court will consider only such grounds of objection as are specified.' The same principle is laid down in 4 C.J.S. Appeal and Error § 290(b), page 878.
"In Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1263, 30 N.W.2d 97, 103, we said:
"`Ordinarily the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious.' See also Neddermeyer v. Crawford County, 190 Iowa 883, 888, 889, 175 N.W. 339, 342; Ferris v. Riley, 251 Iowa 400, 408, 101 N.W.2d 176, 180; State v. Hodge, 252 Iowa 449, 464, 105 N.W.2d 613, 620." McCrady v. Sino, 254 Iowa 856, 118 N.W.2d 592, 595.
While the trial court might, under a different record, have ruled Exhibit 6 inadmissible, we cannot say that the ruling here was error.
"A ruling on the admissibility of photographs will not be interfered with on appeal except upon a clear showing of abuse of discretion. Ingebretsen v. Minneapolis *534 & St. L. R. Co., 176 Iowa 74, 83, 155 N.W. 327, and cases cited. The trend of authority is to vest more discretion in the trial court in a matter of this kind. Even substantial changes in the scene will not necessarily exclude a photograph where the changes can be explained. 32 C.J.S., Evidence, p. 623, § 715. So far as we can find, we have never reversed a case because of the admission of photographs. Other courts have also been slow to reverse because of such a ruling. See, for example, Bruce v. Hanks, 277 Mass. 268, 178 N.E. 728, 729; Skaling v. Sheedy, 101 Conn. 545, 126 A. 721, 36 A.L.R. 540, 544. Reversible error does not necessarily result from the admission of a photograph even though it could properly have been excluded. Nolte v. Chicago, R. I. & P. Ry. Co., 165 Iowa 721, 729, 730, 147 N.W. 192." Coonley v. Lowden, 234 Iowa 731, 12 N.W.2d 870.
IV. Plaintiff's next assignment of error involves the testimony given by one Lindy Brown. Mr. Brown was the electrician who installed the lights in the parking lot. He was late in arriving at trial. It was stipulated that if present he would testify that he is an electrical contractor in the lighting business, that his company installed the lights in the parking lot at Younkers-Eastgate prior to commencement of business by Younkers at that location, that their standard measure of the degree of illumination in the electrical lighting business is a unit called the foot candle power, that the accepted and approved standard in the electrical lighting industry for the illumination of commercial parking lots such as this one is from two to five foot candle power of illumination, and that the lights which they installed at Younkers parking lot provided illumination which is better than or in excess of the standard illumination. Plaintiff did not object to the stipulation as such, but did object to the competency and relevancy of the testimony on the grounds that the lights were installed eight months before and that the witness did not know how the lights were operating at the time the accident occurred. The court offered to wait for the witness but plaintiff's counsel did not avail himself of that offer.
In this connection Isadore A. Koleman, manager of Younkers-Eastgate testified that he personally operates the time clock that turns on the lights. That the lights came on between 6:30 and 7:00 o'clock on the night in question. That they would have been lit between 8:00 and 9:00 o'clock that night.
We believe that the type and kind of lighting equipment in use the night in question was a relevant factor. There was no evidence that any of the individual lights were not working or that they had lost their effectiveness.
Plaintiff had testified that it was dark, that to the best of her knowledge the lights were on, and that there were shadows where she fell. Illumination was definitely in the case. Brown's testimony amounted to no more than that, as installed, the lights equalled or exceeded the standard candle power used for such parking lots. Again, there was no objection as to foundation.
"While it is not conclusive, evidence of what is usual and customary is generally admissible on the issue of negligence. Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 15 N.W.2d 286; Gibson v. Shelby County Fair Ass'n, 246 Iowa 147, 65 N.W.2d 433; Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82; Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167. A custom or usage in any particular trade or business may be shown, as a fact, by a witness who is qualified by knowledge and experience to testify to its existence. Anderson v. Ill. Cent. Ry. Co., 109 Iowa 524, 80 N.W. 561; Middleton v. City of Cedar Falls, 173 Iowa 619, 153 N.W. 1040; Alley, Greene & Pipe Co. v. Thornton Cr. Co., 201 Iowa 621, 207 N.W. 767; Gibson v. Shelby County Fair Ass'n, 246 Iowa 147, 65 N.W.2d 433." McCrady v. Sino, 254 Iowa 856, 118 N.W.2d 592, 595.
*535 No instruction on this matter was requested or given. Plaintiff affirmatively approved the instructions used.
V. Plaintiff's final assignment of error concerns the refusal of the court to admit in evidence a certain lease, specifications and supplemental agreement designated as plaintiff's Exhibits A and C. The lease was offered in its entirety.
The record does not justify a reversal. The lease in question, exclusive of the specifications and supplemental agreement, consists of some 49 pages of detailed covenants between lessor and lessee. Defendant Younkers agreed to the admission of §§ 1, 2, 3, 7 and 9 of the lease. They objected to all other sections of the lease being introduced in evidence for any purpose other than to aid the court in formation of the issues.
The plaintiff repeatedly offered the entire lease in evidence. The court repeatedly and specifically made his rulings on the offer as an offer of the entire lease, stating that the lease contained much extraneous matter that could or would be prejudicial to the defendants. No offer of specific items which plaintiff claimed to be germane to the issues of this case was ever made.
The court ruled "Once more, the lease is offered in its entirety. The objection thereto is sustained in its entirety. The Court was receiving the offer for the Court's benefit, because there is much material in that lease that is just as foreign to this case as anything could be. There are certain items on that lease that will have to be considered in the submission of this case. The Court is going to receive the lease for the Court's benefit, but the lease in its entirety will not be given to the jury. Anything the evidence shows is material to the submission of this case where the lease is in effect or operative will be used by the Court and it will be received only for this purpose and this purpose only.
"Mr. Lindgren: So there is no purpose in trying to pick out paragraphs. The Court: Not at this time. You men have been working on this case for six months, so I am going to have to pick it out."
No offer of proof was made in connection with the specific items which plaintiff contended should go to the jury.
In principle this case is very close to Olson v. Norwegian Mutual Insurance Association, 257 Iowa ___, 140 N.W.2d 91, 94, 95 where we recently had occasion to observe:
"Plaintiff called an officer of Norwegian Mutual Insurance Company who identified exhibits S and T as the companies' complete file on policies 96-1142 and 96-1143. He did not identify each of the many documents therein but did make reference to mortgage records, and correspondence with the Federal Land Bank of Omaha. Plaintiff then offered them as `group exhibits' to which defendants objected on the grounds the offer was in bulk, the files contained inadmissible material which would be subject to objection if offered separately and the exhibits were incompetent, irrelevant and immaterial. Plaintiff asserts the trial court erred in sustaining the objection. He made no offer of proof.
The rule is well established the offer in bulk of several documents as one exhibit some parts of which are improper requires the exclusion of all upon a proper objection. (Cases cited)"
Affirmed.
All Justices concur.