**SIMON'S FEED STORE, INC., An Iowa Corporation, Appellee,**

v.

**Leo W. LESLEIN, Appellant.**

No. 90–132.

Supreme Court of Iowa.

Dec. 24, 1991.

As Corrected Jan. 2, 1992.

Les V. Reddick and Stephen C. Krumpe of O'Connor & Thomas, P.C., Dubuque, for appellant.

Douglas M. Henry and David C. Rashid of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

CARTER, Justice.

Defendant, Leo W. Leslein, has appealed from a money judgment against him and in favor of plaintiff, Simon's Feed Store, Inc. (Simon's Feed), following a jury trial of a premises liability action. The action sought recovery for damages to a Simon's Feed grain truck when a wooden bridge collapsed on a private lane owned by defendant.

The court of appeals reversed the judgment in favor of Simon's Feed and ordered that judgment be entered in favor of defendant. It based this action on its determination that defendant's obligation to Simon's Feed was fully discharged as a matter of law by the giving of an adequate warning of any perceived danger.

We granted further review of the decision of the court of appeals. After considering the arguments of the parties, we disagree with that court's conclusion that defendant is entitled to prevail as a matter of law. We do agree, however, with defendant's alternative contention that he is entitled to a new trial as a result of certain jury instructions given by the trial court.

The salient facts as shown by the trial evidence include the following. Defendant, Leo W. Leslein, is a farmer in Dubuque County. His property is accessible over a private one-half-mile gravel lane on which he has constructed two wooden-plank bridges. On occasion he has allowed his neighbor, Leon Burke, to use this lane to obtain access to Burke's farm fields, which abut defendant's private roadway.

The bridge at issue was constructed by defendant in 1972. It is a twenty-three-foot bridge over a creek. The base of the bridge consists of five steel "I" beams placed thirty inches apart, running the length of the bridge, and cemented into concrete abutments at both ends. Wooden planks sixteen feet long, twelve inches wide, and three inches thick were placed perpendicularly across the "I" beams. The planks were not fastened to the steel beams nor fastened together. The planks extended beyond the beams three feet on each side of the bridge.

On November 10, 1986, Burke was picking corn and needed a truck to haul the grain from his farm field. He telephoned Simon's Feed and requested that it provide a truck for this purpose. A discussion ensued as to the route to be taken, and it was agreed that Simon's Feed's truck would travel over defendant's private lane.

While Burke was on the telephone with a Simon's Feed's office employee, that employee placed him on hold and telephoned Simon's Feed's vice president, Roger Simon, on another line. She discussed Burke's request for a truck with him. Although Roger Simon agreed that a "straight truck" was preferable for traveling over the wooden plank bridges, no "straight trucks" were available at the time. Consequently, Roger Simon suggested sending a semitruck.

The Simon's Feed's office employee relayed this information to Burke who then asked defendant whether a semi had ever crossed over his bridges. Defendant indicated that a semi had previously traversed the bridges on at least one occasion. Roger Simon testified at trial that when he sent the truck he knew that Simon's Feed's semis had been sent over this route before. He indicated, however, that on the prior occasions thirty-six-foot semis had been used.

Roger Simon further testified that, because other Simon's Feed trucks had carried an equivalent weight over these plank bridges on prior occasions, he was not concerned with the structural integrity of the bridge. He was, rather, concerned that the rear wheels of the sixty-foot unit might miss the bridge altogether. This witness stated that he had warned the truck driver to "make sure you're on the bridge" and "make sure you hit the bridge at the right angle."

Without telling either Burke or defendant, Roger Simon decided to send a forty-five-foot trailer to Burke's field, using defendant's private lane. The truck was driven by George Heisler, a Simon's Feed employee with seventeen years of driving experience. The total length of the unit including the tractor was approximately sixty feet. Heisler had been over defendant's lane on at least sixteen prior occasions with smaller trucks.

Heisler drove the truck down the lane and across the bridges to Burke's field for loading. Not until the truck arrived at the field did Burke or defendant notice that it was larger than any sent before. Before Heisler left with the loaded truck, defendant warned him to go slowly and to keep toward the center when crossing the bridge.

When the Simon's Feed truck left Burke's field, it was dark, snowing, and slippery. Heisler drove around a curve before coming onto a bridge. He attempted to stay toward the center. The trailer, however, was not lined up squarely behind the truck tractor. The rear wheels of the trailer did not travel over the portion of the bridge supported by steel. The weight of the rear wheels snapped the unsupported ends of the bridge planking, causing the truck to overturn.

■ The district court submitted the case to the jury on three specifications of negligence against the defendant and on plaintiff's contributory fault. The three specifications of negligence against defendant were: (1) permitting the plaintiff to send its truck over a bridge that defendant knew or should have known to be unsafe, (2) failing to construct a bridge that was adequate to support anticipated traffic over the roadway, and (3) failing to warn plaintiff that the bridge was inadequate to support its truck. The jury returned a verdict finding plaintiff to be fifteen percent at fault and defendant to be eighty-five percent at fault. The dollar amount of damages sustained by the truck had been stipulated, and the court awarded plaintiff eighty-five percent of that amount.[1] Other

---

1. In answering a special interrogatory, the jury found that defendant's truck driver was completely free of fault. On cross-appeal, plaintiff argues that based on this interrogatory answer it should have been awarded 100% of the stipulated damages rather than 85%. Because the trial court's marshaling instruction only permitted the jury to assess fault against the plaintiff as a result of acts or omissions of its driver, Heisler, we believe that the answer to the interrogatory is inconsistent with the jury's apportionment of aggregate fault. Because the judgment is being reversed on other grounds, we need not decide whether this is correctable or merely grounds for a new trial. Because the case must be retried, we note our belief that, although the trial court's instructions only permitted the jury to assess fault to plaintiff based on Heisler's acts or omissions, the evidence

facts and circumstances material in deciding the appeal will be set forth and discussed in our consideration of the legal issues presented.

## I. *The Court of Appeals Decision.*

█ In ordering a judgment for defendant, the court of appeals concluded that Simon's Feed's status on Leslein's property was that of a bare licensee. Plaintiff urges that this was error. Considering Simon's Feed's purpose in going on the premises and Leslein's involvement in the arrangements, we agree that it was not a bare licensee. Its status at the time and place that its truck was damaged is more properly characterized as an invitee. *See Reasoner v. Chicago, R.I. & Pac. R.R.,* 251 Iowa 506, 511, 101 N.W.2d 739, 742 (1960).

█ The court of appeals' mischaracterization of Simon's Feed's status does not appear to have been significant with respect to that court's holding. In concluding that defendant's duty to Simon's Feed had been fully discharged as a matter of law, the court relied on case law applying the duties owed to invitees. It correctly determined, through reliance on *Mundy v. Warren,* 268 N.W.2d 213, 217 (Iowa 1978), that defendant's duty to Simon's Feed was to warn or to make safe, but that compliance with either of these duties was sufficient to preclude liability.[2]

█ We next review the court of appeals' conclusion that defendant's warning to Simon's Feed was sufficient to discharge a possessor's duties to an invitee as a matter of law. Factors which that court found to be significant in answering this question in the affirmative were Simon's Feed's familiarity with the road and bridges, the fact that its trucks had traversed the bridges on no less than sixteen prior occasions, and the fact that on some of these occasions its trucks had carried loads equal to or exceeding the load being carried at the time of the November 1986 accident.

The court of appeals also found it to be significant that both Roger Simon, plaintiff's vice president, and defendant gave Heisler the same general warning, *i.e.,* to stay toward the center of the bridge.

While we view the issue as close, we conclude that a jury issue existed concerning the adequacy of defendant's warning. Although both Roger Simon and defendant warned Heisler to stay toward the center of the bridge, these individuals were not possessed of the same knowledge concerning the bridge's structural underpinning. Simon's testimony indicated that he was aware that the bridge would support the anticipated load as a result of prior trips by Simon's Feed's trucks. He indicated that his concern with staying toward the center was simply to assure that the rear wheels of the trailer would not miss the bridge and go off the edge. Unlike defendant, he was not aware that the outer three feet of the bridge planking was unsupported.

We have recognized that the duty a possessor of land owes to an invitee is dependent to a considerable extent on the possessor's superior knowledge on the condition of the land. *See, e.g., Hanson v. Town & Country Shopping Ctr.,* 259 Iowa 542, 548–49, 144 N.W.2d 870, 874–75 (1966). We believe a jury could have found on the present record that defendant had superior knowledge that the outside edges of the bridge planking were unsupported and, in the exercise of reasonable care, should have warned Simon's Feed of that fact. We therefore respectfully disagree with the court of appeals' decision that the warning that was given discharged all duties owed to Simon's Feed as a matter of law.

## II. *Jury Instruction as to Conformity to Custom.*

█ Defendant asserts that, even if the court of appeals was incorrect in finding that he was entitled to a favorable judg-

---

would have also supported attribution of fault to plaintiff from the acts of Roger Simon.

**2.** Although the trial court's instructions do not expressly advise the jury that compliance with

either of these duties was sufficient to preclude liability, no issue has been raised concerning that failure.

ment as a matter of law, he is nevertheless entitled to a new trial as a result of erroneous jury instructions. Specifically, defendant contends that the district court erred in giving Instruction No. 13 concerning conformity to custom over his objection.

The challenged instruction reads as follows:

### INSTRUCTION NO. 13

Evidence has been introduced concerning a practice of use of design criteria in the design of bridges including standards and regulations of professional associations and governmental agencies. Such governmental standards and regulations are directly applicable only to public bridges, and therefore a failure, if any, of the Defendant to comply with governmental standards and regulations does not necessarily constitute negligence. You are instructed, however, that you may consider evidence of the use of design criteria, standards and regulations in the design of bridges as evidence of custom generally. Conformity to a custom is evidence of ordinary care, and noncomformity is evidence of negligence.

We conclude that the giving of this instruction was reversible error.

 Our cases recognize that conformity to custom or the lack thereof may, in some situations, be evidence of negligence. *See, e.g., McCrady v. Sino,* 254 Iowa 856, 861, 118 N.W.2d 592, 594 (1962); *Langner v. Caviness,* 238 Iowa 774, 778, 28 N.W.2d 421, 423 (1947). We are not persuaded, however, that the present facts justify the giving of the challenged instruction. In order for custom to be evidence of negligence, it must be shown that the custom in question extends to the type of conduct at issue in the litigation. *Jackson v. Chicago, Mil., St. P. & Pac. R.R.,* 238 Iowa 1253, 1263, 30 N.W.2d 97, 103 (1948). In the present case, there was no showing made

that the design criteria applicable to bridges on public highways constitute a custom that is generally followed in designing bridges on privately owned roadways. In the absence of proof of similar anticipated traffic patterns, the seemingly great difference in amounts and types of traffic negates any suggestion of comparability.

 We have considered all issues presented and conclude that the judgment of the district court must be reversed for the reasons we have indicated.[3] The case is remanded to the district court for a new trial of all issues.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.

---

**3.** Defendant has also challenged the admission of expert testimony, which compared his bridge design to standards applicable to bridges built on public highways. We believe that expert testimony as to the structural sufficiency of the bridge for its anticipated use was proper. *See*

*McCrady,* 254 Iowa at 862, 118 N.W.2d at 595. It would not be proper, however, to present expert testimony as to the sufficiency of the bridge based solely on a comparison with standards applicable to public highway bridges.