# IN THE COURT OF APPEALS OF IOWA

No. 14-1410
Filed August 5, 2015

**IN RE THE MARRIAGE OF DAWN LEANN SHERIFF**
**AND JAMES ALEXANDER SHERIFF**

**Upon the Petition of**
**DAWN LEANN SHERIFF,**
**n/k/a DAWN LEANN KENNEDY,**
        Petitioner-Appellee,

**And Concerning**
**JAMES ALEXANDER SHERIFF,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Adair County, Randy V. Hefner,

Judge.


        Respondent appeals from an order modifying the parties' dissolution

decree and denying the respondent's application for rule to show cause.

**AFFIRMED.**


        Carmen E. Eichmann of Eichmann Law Firm, Des Moines, for appellant.

        David E. Brick of Brick Gentry, P.C., West Des Moines, for appellee.


        Considered by Tabor, P.J., McDonald, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, J.**

James Sheriff appeals from an order granting Dawn Sheriff n/k/a Kennedy's petition to modify the visitation provisions of the parties' decree of dissolution of marriage and denying his application for rule to show cause. We affirm the district court.

I.

The parties married in 1996 and divorced in 2005. There were two children born to the marriage: A.S., in 1997, and T.S., in 2004. At the time of the dissolution of marriage, the family resided in Greenfield, Iowa. The parties were granted joint legal custody of the children. Dawn was granted physical care of the children, subject to reasonable and liberal visitation with James. As relevant here, the decree set forth a co-parenting schedule in which James had the children every week from Tuesday at 5:30 p.m. until Thursday at 7:30 a.m. and every other weekend from Friday at 5:30 p.m. until Sunday at 7:00 p.m. In March 2010, after T.S. entered kindergarten, the visitation schedule was modified. The modification order provided James had the children every week from Tuesday at 3:30 p.m. until Thursday at 7:30 a.m. and every other weekend from Friday at 3:30 p.m. until Sunday at 7:00 p.m.

In July 2013, Dawn filed a petition to modify the visitation provisions of the decree. Dawn's stated reasons for seeking modification of the decree were her impending marriage; her move to Adel, where her new husband resided; and the impending enrollment of the children in a new school district. Adel is approximately forty-five miles from Greenfield. There is a dispute as to when

Dawn officially informed James of these life changes, but it can be fairly said that it was not timely.

James filed his answer and counterclaim, seeking joint physical care of the children. James also filed a nine-count application for rule to show cause. The substance of each count need not be repeated herein. In sum, James alleged Dawn failed to communicate information and involve him in decisions regarding the children, particularly the move to Adel. At trial, James amended his counterclaim to seek only a modification of the parenting schedule.

The district court granted Dawn's petition and denied James application for rule to show cause. The district court found Dawn's move to Adel constituted a material change in circumstances. The district court found the parties' midweek visitation schedule was impractical. The district court also found ongoing midweek visitation was not in the children's best interests due to interference with the children's extracurricular activities and academic obligations, among other things. The district court modified the decree and eliminated the midweek visitation provision. The district court found, however, the children should maintain significant and meaningful contact with James and extended James's alternating weekend visitations from Thursday after school until the beginning of school on the following Monday. The district court also granted James more liberal summer visitation and spring break visitation. The district court denied the application for rule to show cause, concluding the evidence fell "far short" of establishing beyond a reasonable doubt that Dawn's failure to communicate was willfully and intentionally contrary to a known duty.

II.

A.

"A parent seeking to modify visitation must only establish that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *In re Marriage of Brown*, 778 N.W.2d 47, 51-52 (Iowa Ct. App. 2009) (internal quotation marks removed). Our review of the modification order is de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g); *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

The mother's forty-five-mile move to reside with her spouse and the enrollment of the children in a different school district constitutes a material change in circumstances. *See Marriage of Hoffman* (*Hoffman II*), ___ N.W.2d ___, 2015 WL 2137550, at *9 (Iowa 2015) (remanding for entry of new visitation schedule where mother moved children to reside with new spouse in different community); *In re Marriage of Deck*, 342 N.W.2d 892, 896 (Iowa Ct. App 1983) (holding a move from Sioux City to Omaha due to employment constituted a material change in circumstances warranting modification). James does not appear to contest whether there has been a material change in circumstances.

We conclude the preponderance of the evidence showed the modification to the visitation schedule was in the best interests of the children. *See* Iowa

Code § 598.41(3) (2013) (identifying relevant factors); *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974) (identifying factors). The evidence showed the children were participating in or were expected to participate in several extracurricular activities and that midweek visitation would inhibit or at least make participation in the same more difficult. The midweek visitation period also hindered the children's academic pursuits. A.S. testified the travel time made it more difficult for her to complete her homework and study. She also testified it made it more difficult to travel to school early for extra assistance in the academic areas where she needed assistance. She also testified the travel schedule and inconsistency in her home environment made her tired. The children also developed new relationships in Adel, and the midweek visitation limited their social opportunities. In particular, the evidence showed T.S. developed a close relationship with his two step-siblings of approximately the same age and wanted to spend more time with them. *See, e.g.*, *In re Marriage of Thompson*, No. 02-1351, 2003 WL 21075904, at *3 (Iowa Ct. App. May 14, 2003) (affirming care arrangement and noting the maximization of relationship with both parents and step-sibling was an important consideration).

James asserts two primary legal arguments against the modification. First, James appears to contend midweek visitation is mandatory. However, the case upon which he relies does not support the proposition and can be read to stand for the contrary proposition. *See In re Marriage of Toedter*, 473 N.W.2d 233, 235 (Iowa Ct. App. 1991) (ordering midweek visitation "as long as Linda resides in the same school district as the children"). Further, there is no

independent requirement for midweek visitation. The district court's objective is to craft a visitation schedule that maximizes parental contact and that is in the best interests of the children. *See* Iowa Code § 598.41(1)(a).

James also contends that modification should be disallowed because it was necessitated by Dawn's unilateral relocation. He contends it would open up a "Pandora's Box of abuse which no court could tolerate." James's fear of this court peeking inside Pandora's Box is misplaced and inapplicable here. This court, like the district court, is able to distinguish between parental relocation undertaken with ill will and for the purpose of interfering with the other parent's relationship with the children and parental relocation done for some other legitimate purpose. *See generally In re Marriage of Thielges*, 623 N.W.2d 232, 238 (Iowa Ct. App. 2000) (providing legitimate reasons for relocation, including the opportunity to simply get a "fresh start"). The evidence in this case established Dawn moved to reside with her spouse and not with the intent to interfere with James's relationship with the children. *See In re Marriage of Hoffman*, No. 13-1757, 2014 WL 3511893, at *5 (Iowa Ct. App. July 16, 2014) (concluding "the decision to live under the same roof as one's new spouse is a legitimate reason for relocation"), *aff'd*, *Hoffman II*, ___ N.W.2d at ___, 2015 WL 2137550, at *1. James's argument is also contrary to the concept of physical care. Dawn, as the parent with physical care of the children, had the final say in deciding where the children live:

> When, as in this case, joint custodial parents disagree on the question of whether their children's residence should be changed, "the parent having physical care of the children must, as between the parties, have the final say concerning where [the children's]

home will be." [*In re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983)]. We have noted that "[t]his authority is implicit in the right and responsibility to provide the principal home for the children. The right would mean little if the other custodian could veto its exercise." *Id.* at 159–60. And in our "highly mobile society"—a characterization we used in *Frederici* that is surely no less true today—periodic relocation is hardly a surprise. *Id.* at 160.

*Hoffman II*, ___ N.W.2d at ___, 2015 WL 2137550, at *5.

On de novo review, we affirm the modification decree.

B.

We next address James's application for rule to show cause. Because Iowa Code section 598.23 grants the district court discretion to not hold a party in contempt even if the elements have been established, our review of the district court's denial of the application for rule to show cause is for an abuse of discretion. *See* Iowa Code § 598.23 (providing a person "may" be cited and punished for contempt); *In re Marriage of Swan*, 526 N.W.2d 320, 326–27 (Iowa 1995) (stating "a trial court is not required to hold a party in contempt even though the elements of contempt may exist"); *In re Marriage of Parker*, No. 14-0544, 2015 WL 3623650, at *2 (Iowa Ct. App. June 10, 2015) (applying abuse of discretion standard). Generally, the district court's denial of an application for rule to show cause will not be disturbed absent a gross abuse of discretion. *See Swan*, 526 N.W.2d at 327. "An abuse of discretion will be found only when such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Ballanger v. Iowa Dist. Ct.*, 491 N.W.2d 179, 181 (Iowa Ct. App. 1992).

As stated above, James filed a nine-count application for rule to show cause. Among other things, the causes generally related to Dawn's alleged failures to provide information and involve James in decision making. We recognize Dawn could and should have communicated more often with James. As the district court noted on the record at the end of trial, however, both parties share responsibility for failing to communicate about the children. Other than asserting his disagreement with the district court, James has not identified how or why the district court grossly abused its discretion in denying his application. We conclude the district court did not grossly abuse its discretion in denying James's application for rule to show cause.

C.

James raises several issues related to fees and costs. First, he contends the district court should have awarded him attorney's fees. "We review a district court's decision on attorney fees for abuse of discretion." *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). Whether attorney fees should be awarded depends on the parties' respective abilities to pay, *see In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006), and fees awarded must be fair and reasonable, *see In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Jim has maintained steady employment for a number of years and has a solid income, earning significantly more than Dawn. We cannot conclude the district court abused its discretion.

James next contends the district court should not have assessed costs against him. The assessment of court costs in equity cases is within the sound

discretion of the district court. *See Wymer v. Dagnillo*, 162 N.W.2d 514, 519 (Iowa 1968) ("The rule is well established that in an equity action the trial court has a large discretion in the matter of taxing costs and we will not ordinarily interfere therewith."). James has not identified any abuse of discretion, and we find none.

We address the issue of appellate attorney's fees. An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and the parties' financial positions. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007); *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983). "We consider the needs of the party making the request, the ability of the other party to pay," the relative merits of the appeal, and whether the party making the request was obligated to defend the district court's decision on appeal. *See Berning*, 745 N.W.2d at 94. We conclude that the parties shall be responsible for their respective appellate attorney fees.

With respect to appellate costs, "[a]ll appellate fees and costs shall be taxed to the unsuccessful party, unless otherwise ordered by the appropriate appellate court." Iowa R. App. P. 6.1207. Appellate fees and costs do not include appellate attorney fees. *See Englund v. Younker Bros., Inc.*, 142 N.W.2d 530, 531 (Iowa 1966). We direct that all appellate fees and costs be taxed to James. *See Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 696 (Iowa 2010) (stating that it was an "abuse of discretion to divide costs equally between the parties when one party was fully successful on appeal").

III.

We have considered each of the parties' respective arguments, whether or not set forth in full herein.  For the above-stated reasons, we affirm the judgment of the district court.

**AFFIRMED.**