MAX GIBSON, by LAWRENCE GIBSON, his father and next friend, appellant, v. THE SHELBY COUNTY FAIR ASSOCIATION, a corporation, et al., appellees.

No. 48366.

(Reported in 65 N.W.2d 433)

JULY 26, 1954.

REHEARING DENIED NOVEMBER 19, 1954.

Turner & Turner, of Avoca, and Fred Louis, Jr., of Harlan, for appellant.

Hines & Higgins and George O. Hurley, all of Harlan, for appellees.

OLIVER, J.—Plaintiff, Max Gibson, then age seventeen years, while a spectator at automobile races on the track at the fairgrounds of defendant Shelby County Fair Association, was permanently paralyzed by a wheel which became detached from a speeding racer, broke through a wire fence beside the track, and struck him. He brought this action for damages, by his father and next friend. Although officers and directors of the Fair Association are named defendants with it, the association appears to be the only actual defendant. A former appeal in this case, decision reported in 241 Iowa 1349, 44 N.W.2d 362, involved the sufficiency of the petition only. Upon remand, trial to a jury resulted in verdict and judgment for defendant and this appeal by plaintiff.

Defendant leased the fairgrounds for October 23, 1949, to Dale Swanson for "hot rod" and "stock car" automobile races. Swanson testified the term "hot rod" means an engine with increased horsepower and a "hot rod" is a racing machine built from a stock car block and body, usually without much regular racing equipment. The gears of the rear wheels are locked so the differential does not operate. This increases the stresses on the axles at the turns. Defendant's track is a dirt, half-mile oval, originally built for horse races. Swanson testified it had since been made a little wider and a little more sloping at the ends.

Plaintiff lived in a neighboring town. He was not familiar with the fairgrounds and had never attended an automobile race. He testified he purchased a ticket and entered the gate; no one was there directing traffic nor were there signs directing patrons where to go; he looked ahead and did not see anyone in that direction; he saw people standing near by "all up and down" a fence watching the races; he walked over "where all the people were standing", and stood eight or ten feet behind the fence which was alongside the track. There were no warning signs in the vicinity.

Witnesses estimated there were from thirty to two hundred people in this area, watching the races, among whom were women, babies and children. This fence was the only barrier between the race track and spectators. There was evidence it consisted of a strip of woven wire 26 to 36 inches in width, above which were several strands of barbed wire. It was in poor repair. Some of the wooden posts were broken and the wire was rusty and loose. Plaintiff testified he saw one race and some time trials and was injured during the next race. He did not see the detached wheel rolling toward him but the people who were standing in front of him "faded away" and he was struck by it. A spectator who stood at the fence in front of plaintiff saw the wheel come off the racer and travel in his direction. He knelt in an effort to escape it. The wheel burst through the fence, injured his hand and continued its course.

Defendant introduced evidence of warnings, over the loud speaker, to spectators to keep away from the fence and come to the grandstand. Plaintiff testified he could faintly hear the loud speaker but could not understand what was said. Swanson tes-

tified he went to the fence in person, warned spectators the place was dangerous and ordered them out but many of them called him vile names and refused to move. There were highway patrolmen assisting at the track. Swanson testified he continued with the races. Plaintiff testified no one talked to him or others within his hearing about leaving the place.

I.  Plaintiff had pleaded defendant was negligent in that the track and appurtenances were unsuitable, inadequate and dangerous to spectators, and the wire fence barrier adjacent to it, maintained for the protection of spectators from dangers inherent in the races, was wholly unsuitable and inadequate for that purpose and had been permitted to become dilapidated and in a ruinous condition.

██ ██  He assigns as error the refusal of the court to permit him to show the usual, customary and approved methods of construction of barricades, walls and fences, on tracks of this type, for the protection of spectators at automobile and "hot rod" races.

Plaintiff first attempted to show this by Abe Slusky, the operator, for some years, of Playland Stadium, an automobile race track in Council Bluffs:

"Q.  Are you familiar with the usual and customary construction of race tracks used for automobile racing?  (Objection)

"The Court:  Sustained.

"Q.  Do you know what the usual and customary standards are with reference to the maintenance of automobile race tracks where the track is maintained and used for public amusement, and are you acquainted with the usual and customary standards of protective devices used on such tracks for the protection of the public who attend * * *?  (Objection)

"The Court:  Sustained.

"Q.  Are there among automobile race track owners certain customary methods and approved methods of construction of barriers, walks, fences and barriers around such tracks for the protection and safety of the spectators?  (Objection)

"The Court:  Sustained."

Plaintiff then offered to prove "that there are certain customary and approved methods of construction of barricades,

walls, fences and barriers on tracks of similar character and nature * * * which barricades, walls, fences and so forth are erected for the protection and safety of spectators invited to view * * * automobile racing * * *." The proffer referred also to the practice of providing guardrails, safety zones, additional high and strong fences etc., "and that such practice is [and was in 1949] commonly adopted and used in tracks of such character in this vicinity * * *." An objection by defendant was sustained.

Subject to certain exceptions not here applicable, the rule is well settled that evidence of the custom or common usage of a business or occupation is generally admissible on the question of negligence, although it is not a conclusive test, since the standard of care is ordinary care under the circumstances and the standard of custom cannot be substituted for it. LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 943 et seq., 11 N.W.2d 36; Wood v. Tri-States Theater Corp., 237 Iowa 799, 807, 23 N.W.2d 843, 847; Johnson v. Plymouth Gypsum Plaster Co., 174 Iowa 498, 503, 504, 156 N.W. 721, 724; Langner v. Caviness, 238 Iowa 774, 28 N.W.2d 421, 172 A. L. R. 1135. These authorities cite many other decisions of this court in support of the rule. See also annotations in 68 A. L. R. 1400.

Kuemmel v. Vradenburg, Tex. Civ. App., 239 S.W.2d 869, 872, was an action by a minor spectator at "hot rod" races for injuries sustained when struck by a racing automobile which went out of control and burst through a barrier behind which plaintiff was standing with other spectators and from which spectators had been warned to stay away. Much of the evidence centered upon the inquiry whether the customary fence or barrier had been maintained. The decision states: "The jury has here found, supported by evidence, that there was nonconformity with the customary precaution used at 'hot rod' races. Just as conformity with custom may evidence freedom from negligence, nonconformity may evidence the presence of negligence. "

Blake v. Fried, 173 Pa. Super. 27, 34, 95 A.2d 360, 364, was an action by a spectator at stock car races, against the race track operators, for injuries suffered when a wheel became detached from a speeding racer, bounced 24 feet into the air, cleared a protective fence 14 feet high and fell into the grandstand. There

was no allegation or proof that the precautions were substandard or defective. The decision states: "In this case plaintiffs adduced no evidence whatever as to the height of protective fences at other race tracks which the jury could use as a basis of comparison to determine whether or not defendants were negligent in not having erected a higher one. While customary methods do not furnish a conclusive or controlling test of negligence or justify a practice obviously laden with danger, they are nevertheless to be considered as factors of measurement of due care."

Atlantic Rural Exposition, Inc., v. Fagan, 195 Va. 13, 25, 77 S.E.2d 368, 375, was an appeal, by a track owner and the track lessee, from a judgment for injuries to a spectator when a wheel became detached from a speeding racer, struck a guardrail, bounced over a $3\frac{1}{2}$ foot fence, passed under a suspended chain, bounded into the bleachers and struck plaintiff. Appellants complained there was no expert evidence to establish a standard of care to be followed in the erection of protective facilities. The court held such evidence was not necessary under the circumstances, and stated: "But here evidence was offered that distinctly tended to show that freed wheels are recognized hazards and that they at times hurdle fences as high or even higher than the one maintained and travel hundreds of feet. No expert testimony was necessary to show that this fence was known or should have been known to experienced race track operators to be insufficient protection for spectators within the area provided for them."

In 65 C. J. S., Negligence, section 16, page 404, the rule is stated in boldface: "The common usage of a business or occupation is a test of care or negligence, and is a proper matter for consideration in determining whether or not sufficient care has been exercised in a particular case, at least where the conduct in question is not inherently dangerous; but customary methods or conduct do not furnish a test which is conclusive or controlling on the question, and negligence may exist notwithstanding the conduct pursued or the methods adopted were in accordance with those customarily pursued or adopted."

38 Am. Jur., Negligence, section 317, pages 1015, 1016, states: "The degree of care which is required of a person either to pre-

vent injury to another or to protect himself is reasonable care under the circumstances. Although subject to certain qualifications, the rule is that upon the issue of negligence or contributory negligence, evidence of the ordinary practice or of the uniform custom, if any, of persons in the performance under similar circumstances of acts like those which are alleged to have been done negligently is generally competent evidence. Evidence of custom is admissible to prove negligence as well as to disprove it."

It is clear the proffered evidence was competent.

■■ II. Other grounds of defendant's objections were, the witness was incompetent and the questions called for his opinions and conclusions. In their brief counsel for defendant state Slusky failed to "qualify as an expert on the question of custom and usage." These grounds of the objections were not valid. The questions asked the witness did not call for his opinion as an expert. The text in 32 C. J. S., Evidence, section 483, pages 139, 140, 141, states:

"A custom or usage of trade must be established as a matter of fact and not of opinion, hence witnesses must testify to its existence as a fact. * * *

"Accordingly a witness who is qualified by knowledge and experience may testify as to the existence, as a fact, * * * of a custom or usage in any particular trade * * * and he need not first state the incidents or instances within his knowledge by which he became possessed of the knowledge of the custom, unless required to do so. * * *

"In order to render a witness qualified * * * it must appear to the satisfaction of the court that the witness has adequate knowledge of the custom or usage as a fact. * * * all that is necessary is that he should have occupied such a position as to know of the existence of the custom as a fact."

In the language of Alley, Greene & Pipe Co. v. Thornton Creamery Co., 201 Iowa 621, 624, 207 N.W. 767, 768: "* * * any person who knows what that custom is, will be a competent witness to testify to such custom."

See also Anderson v. Illinois Central R. Co., 109 Iowa 524, 528, 80 N.W. 561; Schultz v. Ford Bros., 133 Iowa 402, 407, 109 N.W. 614, 12 Ann. Cas. 428.

III. Defendant contends also: "The trial court gave permission to the witness Abe Slusky, to testify as to custom, and plaintiff abandoned the witness and refused to interrogate him." In this connection, the record shows the witness Slusky was recalled by plaintiff. He testified he had seen race tracks in certain midwestern cities. He was again asked the usual and customary method of construction with reference to barriers, etc. Objections thereto were again sustained.

He was asked also: "Q. And do you know from your observation on other tracks and knowing what they have, do you know what the customary method is in that respect? (Objection) There is no proper foundation laid. It is incompetent, irrelevant and immaterial.

"The Court: I don't know. It might be in France or England. Sustained.

"Q. Is there a custom or a general method used by persons in the business along the lines I have suggested? (Objection)

"The Court: He may answer this yes or no. A. Yes.

"Q. All right. Now, state to the jury what the usual and customary method of construction is, permanent construction, on a race track of a kind similar to yours in respect to barriers, walls, fences, guardrails and any other devices of a permanent nature for the protection of the public against any hazard resulting from a wheel leaving an automobile while racing upon the track. (Objection)

"The Court: Similar to his. This track is not, apparently, similar to his and the objection is good. He has got a quarter-mile [track] down there at Playland. The track here is a half-mile track. There is a difference in size."

Later the witness was asked if there was "any difference between a half-mile and a quarter-mile oval track for a hot rod race. (Objection) The Court: I think the jury understand his qualifications. He can answer, whether he knows anything about it." This is the language by which defendant asserts the trial court gave permission to the witness "to testify as to custom." "A. The tracks I am familiar with are all quarter-mile tracks of the type we operate."

Following this answer the examination of the witness was ended. Under the circumstances the so-called abandonment of

the witness by counsel for plaintiff was from necessity rather than choice. The court had just stated defendant's track was not similar to a quarter-mile track and had directed the witness to answer merely, "whether he knows anything about it." Counsel for plaintiff were not required to continue indefinitely their efforts to introduce this evidence. The repeated adverse rulings and orders of the court demonstrated it would not be admitted. Defendant's contention plaintiff should have persisted further is without merit. We hold the orders sustaining objections to the proffered testimony were erroneous and that the error was prejudicial.

IV. We will not attempt a detailed consideration of the orders rejecting the testimony of the other witness relative to custom and usage. However, it appears his examination at times went somewhat afield and some of the orders sustaining objections were not erroneous. In another trial the record in this particular will probably be different.

V. Plaintiff moved to withdraw from the consideration of the jury, on the ground the same did not constitute a defense to the action, the following portions of defendant's answer (in substance) : From Paragraph 3. That at said track there was an amphitheater together with bleacher seats for the use, convenience and safety of spectators, with ample room for all. From Paragraph 5. That, although many times so requested, plaintiff failed and refused to go into the grandstand or bleachers, in which there was ample room and which was a safe and adequate place for viewing the races. Apparently the motion overlooked a similar allegation in Paragraph 7.

The record does not show a ruling or order upon this motion. However, plaintiff contends "the court erred in (1) allowing the defendant's claim of 'assumed risk' to stand in the answer and (2) in submitting said issue to the jury for the reason that there is a total lack of evidence * * *", etc. The record does not show any exceptions were taken to the instructions. Hence, the claimed error in the instructions will not be considered.

Moreover, we do not find defendant pleaded assumption of risk, which is an affirmative defense. It may be conceded that when one pleads matters as a defense it may not be necessary to

plead the conclusion that such pleaded matters constitute a specific named defense. But here defendant did plead a conclusion in Paragraph 9, "* * * and the damages sustained by him were the proximate result of his negligence in placing himself in a position of danger and remaining therein after numerous requests to place himself in the grandstand or bleachers adjacent to said race track.", and in Paragraph 10, "the injuries and damages sustained by the said Max Gibson are the direct result of his negligence in placing himself in a position of danger and his failure to place himself in a safe and adequate place, to wit, the grandstand or bleachers provided for the safety of the spectators at said races."

Having pleaded the damages were the result of plaintiff's negligence defendant would not be entitled to an instruction upon an affirmative defense not technically based thereon.

It is questionable whether the defense of assumption of risk would be here applicable. Although the defenses of assumption of risk and contributory negligence are said to be distinct they are often confused. An article by Charles Warren in Volume 8, Harvard Law Rev., 457, 459, states: "This confusion arises from the fact that in many States contributory negligence is not treated as a defence, but rather as a bar to the plaintiff's case, which he himself must remove before being able to maintain his action. Treating the defence in this way naturally breaks down the line between contributory negligence and Volenti non fit."

In Miller v. Mathis, 233 Iowa 221, 227, 8 N.W.2d 744, 747, the giving of an instruction upon the assumption of risk of a passenger, not a guest, in an automobile, was held error. The court stated: "* * * we are reluctant to inject the doctrine of assumption of risk as an affirmative defense in a case such as this. * * * The doctrine is also defensive in those jurisdictions where contributory negligence is an affirmative defense. Such is the situation in this jurisdiction by statute in master-and-servant cases [citations]. But in this jurisdiction, in cases like the one now before us, the plaintiff has the burden of proving freedom from contributory negligence. In such a case, acquiescence in defendant's negligence, if relied on, constitutes an issue that pertains to a matter upon which plaintiff has the burden, rather than an issue on which defendant has the burden. To require a

court to instruct upon contributory negligence and include the issue of acquiescence there and also to instruct upon that issue as an affirmative defense would inject confusion into the case which should be and can be avoided by confining the issue to the instruction on contributory negligence."

Various decisions are cited to the effect that acquiescence in a position of obvious danger is contributory negligence and expressions that plaintiff assumed the risk have been used where plaintiff was said to be guilty of contributory negligence.

It may be noted that in Zieman v. World Amusement Service Assn., 209 Iowa 1298, 228 N.W. 48, which involved injuries by a racing automobile to a standing spectator, the issue at this point was contributory negligence.

In the case at bar defendant pleaded plaintiff's injuries were the result of his negligence in placing himself in a position of danger and remaining there. This pleads a type of contributory negligence. Restatement of the Law, Torts, section 466, section 893.

Johnson v. Evanski, 221 Minn. 323, 325, 22 N.W.2d 213, 215, states: "Assumption of risk, which was not pleaded as a defense, is not in issue here except insofar as it is but a phase of the issue of contributory negligence", and quotes: " 'In the ordinary personal injury action, where plaintiff puts himself in a position to encounter known hazards which the ordinarily prudent person would not do, he assumes the risk of injury therefrom. Such assumption of risk is but a phase of contributory negligence and is properly included within the scope of that term.' "

Perroni v. Savings Bank of Tolland, 128 Conn. 679, 682, 25 A.2d 45, 46, states: " 'The fact that the plaintiff is barred only if he is unreasonable in encountering the risk, a fact not considered where there is the true defense of voluntary assumption of risk, indicates that it is a form of contributory negligence.' "

Other errors assigned by plaintiff probably will not appear in another trial and need not be determined.—Reversed.

All Justices concur.